IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC ANTHONY JONES | : | CIVIL ACTION |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MICHAEL ASTRUE | : | NO. 11-6698 |
| COMMISSIONER OF SOCIAL SECURITY | : | |

## REPORT AND RECOMMENDATION

M. FAITH ANGELL                                             March 1, 2013
UNITED STATES MAGISTRATE JUDGE

### I. INTRODUCTION[1]

This is an action brought pursuant to 42 U.S.C. §405(g) and 1383(c)(3) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying Plaintiff Eric Anthony Jones' claim for supplemental security income (SSI) under Title XVI of the Social Security Act (the Act). Presently before this Court are the parties' pleadings, including Plaintiff's Motion for Summary Judgment and Request for Review and his brief and statement of issues in support thereof[2] and Defendant's Response to Request for Review of Plaintiff[3]. On July 16, 2012, counsel presented oral argument. For the reasons which follow, I recommend that the relief sought by Plaintiff be denied and that judgment be entered in favor of Defendant confirming the decision of the Commissioner.

---

[1] The Administrative Record, a Complaint, an Answer, Plaintiff's Motion for Summary Judgment and Request for Review and his Brief and Statement of Issues in Support of Request for Review, and Defendant's Response to Request for Review of Plaintiff have been filed and reviewed in this action.

[2] Hereinafter "Plaintiff's Brief".

[3] Hereinafter "Defendant's Response".

## II. BACKGROUND AND PROCEDURAL HISTORY

Mr. Jones was born on May 17, 1971. Administrative Record[4] at 160-161, 200-201, 212-215. He testified that he attended school through the tenth grade, with some special education classes. Record at 30-31, 47. The record also indicates, however, that Plaintiff has a twelfth grade education, with no special education. Record at 76, 180-188. He has past relevant work as a cashier. Record at 18, 31. Mr. Jones alleges an onset disability date of May 7, 2007, arguing that he is disabled as a result of a "debilitating combination of physical impairments including degenerative joint disease so severe that he requires a hip replacement, obstructive sleep apnea and obesity". Plaintiff's Brief at 1; Record at 10.

Mr. Jones protectively filed an application for SSI benefits on February 20, 2009. The claim was initially denied, and, thereafter, he filed a timely written request for Hearing on July 22, 2009. A Hearing was scheduled for December 14, 2010, in Philadelphia, Pennsylvania; however, Plaintiff appeared for the Hearing unrepresented. Administrative Law Judge (ALJ) Ann Chain continued the Hearing to enable Mr. Jones to obtain representation, if he wished. Record at 63-71.

A second Hearing was held on March 29, 2011, before ALJ Chain. Record at 10. Mr. Jones testified, represented by Nancy Cedeno, a non-attorney representative. Vocational Expert (VE) Sherry L. Kristal-Turetsky also testified. Record at 10. On May 6, 2011, the ALJ issued a decision in which she found that Plaintiff has the following severe impairments: obstructive sleep apnea (OSA), degenerative joint disease (DJD), right hip avascular necrosis (AVN); hypertension (HTN), obesity and diabetes. Record at 12. She further found that Mr. Jones was not disabled because he had the residual functional capacity (RFC) to perform less than the full range of light work, in that

---

[4]Hereinafter the "Record".

he could not climb ladders, ropes or scaffolds. He could occasionally use ramps and climb stairs, as well as occasionally perform balancing, stooping, kneeling, crouching and crawling. He should avoid hazards including moving machinery and unprotected heights, and he requires the ability to alternate sitting and standing at will. Record at 14. Mr. Jones sought review by the Appeals Council, which was denied on August 29, 2011. Record at 1-3. On October 26, 2011, Plaintiff filed this action alleging that "substantial evidence does not support the ALJ's findings that Mr. Jones can perform a limited range of light work and because the Administrative Law Judge (ALJ) failed in her duty to consider properly the effects of Mr. Jones' obesity". Plaintiff's Brief at 1, 7. In addition to claiming that the ALJ failed in her duty to evaluate properly Plaintiff's obesity, he alleges that substantial evidence does not support the ALJ's conclusion that his hip impairment does not meet or equal the listing requirements. Plaintiff's Brief at 7,10. Nor does Plaintiff feel that substantial evidence supports the conclusion that he can perform a limited range of light work on a sustained basis. Plaintiff's Brief at 12. Finally Mr. Jones alleges that the ALJ erred in relying upon the testimony of the VE. Plaintiff's Brief at 16.

## III. SOCIAL SECURITY DISABILITY LAW

### A. Disability Determination

The Social Security Act authorizes several classes of disability benefits, including SSI benefits. In order to qualify for benefits, a claimant must show that there is some "medically determinable basis for an impairment that prevents him from engaging in 'substantial gainful activity' for a statutory twelve-month period." *Fargnoli v. Massanari*, 247 F.3d 34, 38-39 (3d Cir. 2001) (*quoting Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999)); 42 U.S.C. §423(d)(1)(1982). A claimant can establish a disability in either of two ways: (1) by producing medical evidence that

one is disabled *per se* as a result of meeting or equaling certain listed impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (2000), or (2) by demonstrating an impairment of such severity as to be unable to engage in any kind of substantial gainful work which exists in the national economy. *Heckler v. Campbell*, 461 U.S. 458, 460 (1983); 42 U.S.C. §423(d)(2)(A).

The Commissioner's regulations provide a five-step sequential evaluation process for determining whether or not a claimant is under a disability. 20 C.F.R. §416.920. Step one states that an individual who is working will not be found to be disabled regardless of medical findings. 20 C.F.R. §416.920(b). Step two involves evaluating severe impairments. 20 C.F.R. §416.920(c). Step three requires determining whether the claimant has an impairment or combination of impairments which meets or equals a listed impairment in Appendix 1. 20 C.F.R. §416.920(d). Step four states that if an individual can perform past relevant work, he will not be found to be disabled. 20 C.F.R. §416.920(e). Step five requires that if an individual cannot perform past relevant work, other factors must be considered to determine if other work in the national economy can be performed. 20 C.F.R. §416.920(f). *See e.g., Ramirez v. Barnhart*, 372 F.3d 546, 550-51 (3d Cir. 2004).

It is the ALJ's responsibility to resolve conflicts in the evidence and to determine credibility and the relative weights to be given to the evidence. *Plummer*, 186 F.3d at 429 (3d Cir. 1999); *Mason v. Shalala,* 994 F.2d 1058, 1066 (3d Cir. 1993). The ALJ's conclusions must be accepted unless they are without basis in the record. *Torres v. Harris*, 494 F.Supp. 267, 301 (E.D.PA. 1980), *aff'd.* 659 F.2d 1071 (3d Cir. 1981).

### B. Judicial Review of Disability Decisions

The role of this Court on judicial review is to determine whether there is substantial evidence to support the Commissioner's decision. *Fargnoli*, 247 F.3d at 38 (3d cir. 2001); *Knepp v. Apfel*,

204 F.3d 78, 84 (3d Cir. 2000).  Substantial evidence is defined as the relevant evidence which a reasonable mind might accept as adequate to support a conclusion.  *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000).  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence.  *Id.*

It is not the role of this Court to re-weigh the evidence of record or substitute its own conclusion for that of the ALJ.  *See e.g., Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).  Upon appeal to this Court, the Commissioner's factual determinations, if supported by substantial evidence, shall be conclusive.  The conclusiveness applies both to findings of fact and to inferences reasonably drawn from that evidence.  *Fargnoli*, 247 F.3d at 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.")

## IV.  THE ALJ'S DECISION

At the March 29, 2011, Hearing, the ALJ received medical evidence, heard Plaintiff's testimony and received testimony from a VE.  After considering all the evidence of record, the ALJ concluded that Mr. Jones has not been under a disability within the meaning of the Social Security Act since February 20, 2009.  Record at 20.  The ALJ found:

> 1.  The [plaintiff] has not engaged in substantial gainful activity since February 20, 2009, the application date (20 CFR 416.971 *et seq.*).
>
> 2.  The [plaintiff] has the following severe impairments: Obstructive Sleep Apnea hereinafter "OSA"); Degenerative joint disease (hereinafter "DJD"); right hip avascular necrosis (hereinafter "AVN"); Hypertension (hereinafter "HTN"); Obesity; and Diabetes (20 CFR 416.920(c)).
>
> 3.  The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4.  After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity (hereinafter "RFC") to perform less than the full range of light work as defined in 20 CFR 416.967(b) including that he could not climb ladders, ropes or scaffolds; could only occasionally use ramps and climb stairs; could perform no more than occasionally balancing, stooping, kneeling, crouching and crawling; should avoid hazards including moving machinery and unprotected heights; and, that he requires the ability to alternate sitting and standing at will.

5.  The [plaintiff] is unable to perform any past relevant work (20 CFR 416.965).

6.  The [plaintiff] was born on May 17, 1971 and was 37 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue in this case because the [plaintiff's] past relevant work is unskilled (20 CFR 416.968).

9.  Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969(a)).

10.  The [plaintiff] has not been under a disability, as defined in the Social Security Act, since February 20, 2009, the date the application was filed (20 CFR 416.920(g)).

Record at 11-20.

In evaluating the medical evidence, the ALJ determined:

. . . Although the [plaintiff] has alleged having kidney disease; narcolepsy; headaches; a history of Bells palsy; knee pain, and back pain, there is minimal clinical evidence in the record to corroborate or support any finding of significant vocational impact related to

these conditions.

●The [plaintiff] testified that he has "borderline" kidney disease due to HTN and diabetes, but that additional testing is required per the records about his chronic kidney disease and steatosis of the liver in June and July 2009 in the Penn Orthopedics Records. However, those records show no medically determinable impairments (hereinafter "MDI").

●The [plaintiff] testified he will be tested for narcolepsy, but has not been diagnosed with this impairment and this is not a MDI.

●He has headaches 3 times a week that last 4-6 hours and, sometimes, even days. He tries to sleep them off or takes over-the-counter (hereinafter "OTC") medications. He has no separate diagnosis for these headaches, but his records do not show the severity of his symptoms as reported. These symptoms have been considered below in regard to his limitations with hazards.

●He has pain in his right knee and low back pain. He believes he has arthritis in his back. This all occurred within the past year. He is receiving treatments at Penn Care. This is no diagnosis of an impairment and it is not a MDI.

●He has Bells Palsy, but has no identified limitation from his condition. He has a left facial droop involving his forehead with reference to the Bell's palsy, which was diagnosed in May 2009. He was given a steroid taper per the University of Pennsylvania Hospital records; however, the neurological examination dated June 30, 2009 was non-focal except for Bell's palsy on the left.

. . . . .

He was diagnosed with severe sleep apnea after his February 2006 sleep study (Exhibit 5F. p 2). He reported significant daytime fatigue using his CPAP (Exhibit 5F. p 5). The severity of his sleep apnea was markedly reduced possibly due to the fact that he had a tonsillectomy (Exhibit 5F. p 14). He has not used his CPAP in the past year due to insurance problems (Exhibit 5F. p 9-10). The [plaintiff's] January 2009 sleep study found that his OSA has been reduced, but that this may be due to his recent tonsillectomy (Exhibit 5F. p13-14). He was reported as being tired, having fragmented sleep, and not using his CPAP in February 2009 (Exhibit 4F. p 2). He has been encouraged to lose weight and diet (Exhibit 4F. p 4).

He was on HTN medications while he was incarcerated in 2008 (Exhibit 3F. p 5), but then he was non-compliant and not at his goal later (Exhibit 4F. p 6). He reported SOB, but it is unclear if it is from uncontrolled HTN or sleep apnea. He has findings of high blood pressure (hereinafter "HBP") from his examination by the University

of Penn Health System (hereinafter "U of P") ER on April 25, 2010. However, he left the ER without being seen after his blood pressure was okay and he had no symptoms. He was treated for Sandimmunity (hereinafter "SDI") at the U of P in February 2010 with the finding of HBP on January 30, 2010 and May 28, 2009 (Exhibits 4F and 7F). The [ALJ] found no reference in the records to any problem with headaches, but it was considered in connection with [plaintiff's] HTN diagnosis. There simply is no reference in the records to the severity reported by the [plaintiff].

In terms of his hip problem, he had a steady gait, with muscle strength of 5/5 on May 29, 2008 when at the U of P with Bells Palsy for which he was given prednisone (Exhibit 7F). He had normal musculoskeletal findings in his June 3[0], 2009 treatment for diabetes at the U of P (Exhibit 7F-8F). Then later he was diagnosed with right hip AVN and DJD requiring total hip replacement per his Penn Ortho records (Exhibit 8F). X-rays were referred to in the reports, but were not included in the records. Records from Dr. Bruce Heppenstall in December 2010 (Exhibit 10F), show that the [plaintiff] has an ambulating antalgic gait, limited right hip range of motion (hereinafter "ROM"); motor strength and sensitivity to light touch intact (Exhibit 8F). He was scheduled for right total hip replacement on April 11, 2011, and then will be unable to work for three months (Exhibit 9F).

He was diagnosed with diabetes on June 30, 2009 by the U of P ER personnel per Exhibit 7F. He had glucose readings as high as 555-619 (Exhibit 7F). He left the hospital against medical advice, but returned on July 31, 2009. He was diagnosed and given instructions on treating his diabetes on July 1, 2009 at the U of P. The [plaintiff] admitted that his dietary indiscretions including eating many Italian sugar water ices. His testing at the U of P revealed his blood sugar was 141 in February 2010 (Exhibit 7F).

. . . . .

The State Agency medical consultant physician diagnosed the [plaintiff] with "OSA S/P Tonsillectomy", "HTN", "Obesity" and "Alleged Narcolepsy", but opined that the [plaintiff] has no physical limitations other than that he should never climb ladders, ropes or scaffolds (Exhibit 6F).

The [plaintiff's] orthopedic surgeon Dr. Bruce Heppenstall reported that even though the [plaintiff] was scheduled to have a total right hip replacement surgery, he would only be unable to work for 3 months.

The [plaintiff's] doctor at the U of P Sleep Center reported on January 27, 2009, that there were "no witnessed apneas when the [plaintiff] was using CPAP, but has witnessed apneas off CPAP" (Exhibit 5F. p 7). The doctor also noted on September 23, 2008, that the [plaintiff] was "non compliant CPAP due to insurance issue" (Exhibit 5F. p 9).

. . . . .

●There is no opinion in the file from a physician that declared the [plaintiff] permanently disabled or even temporarily disabled for at least a 12-month period. The State Agency medical consultant physician diagnosed the [plaintiff] with "OSA S/P Tonsillectomy", "HTN", "Obesity" and "Alleged Narcolepsy", but opined that the [plaintiff] has no physical limitations other than that he should never climb ladders, ropes or scaffolds (Exhibit 6F). . . The [plaintiff's] orthopedic surgeon Dr. Bruce Heppenstall reported that even though the [plaintiff] was scheduled to have a total right hip replacement surgery, he would only be unable to work for 3 months. . . .

●In addition the [plaintiff] has had "no witnessed apneas when using CPAP, but has witnessed apneas off CPAP (Exhibit 5F. p 7).

Record at 13, 16-18. When the ALJ determined that Mr. Jones does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1, she opined:

The [ALJ] has taken particular note of Listing 1.02; Major dysfunction of a joint(s) (due to any cause); Listing 3.10: Sleep-related breathing disorders; Listing 9.08: Diabetes mellitus; and all of the Cardiovascular listings in Section 4.01; however:

●The requirements of Listing 1.02, relating to major dysfunction of a joint(s) due to any cause, are not met by the medical evidence in this case. The [plaintiff] retains effective ability to ambulate and to perform fine and gross movements effectively in two extremities.

●Nowhere in the record is there any mention, since the date of disability onset of a sleep-related breathing disorders (sleep apneas) caused by periodic cessation of respiration associated with hypoxemia and frequent arousals from sleep. The [plaintiff] has shown that he has responded to prescribed treatment to lessen his disturbed sleep pattern and associated chronic nocturnal hypoxemia; and it has not caused pulmonary hypertension as required to meet the specifics of Listing 3.10.

●Nowhere in the record is there any mention, since the date of

disability onset of a hypertensive condition of such profound severity as required to meet any of the listings in Section 4.01.

● Nowhere in the record is there any mention of the degree of neuropathy, acidosis, or retinitis proliferans as required to meet or equal Listing 9.08: Diabetes mellitus.

There is no objective evidence in the record to support a finding that the [plaintiff's] condition meets any of these Listing requirements. A detailed description of the medical evidence is cited in the "residual functional capacity" section of this decision which follows immediately and which illustrates that the [plaintiff's] impairments do not meet the specific listing criteria noted above. Additionally, no treating or examining physician has credibly mentioned findings equivalent in severity to the criteria of any listed impairment. In reaching this conclusion, I have also considered the opinion of the State Agency medical consultants who evaluated the issue at the initial level of the administrative review process and reached the same conclusion that the [plaintiff's] impairments do not meet or equal a listing (20 CFR 416.927 and Social Security Ruling 96-6p).

In addition, Social Security Ruling 02-1p requires Administrative Law Judges to consider obesity in determining whether claimants have medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity. The Clinical Guidelines issued by The National Institutes of Health define obesity as present in general where there is a body mass index (BMI) of 30.0 or above. BMI is the ratio of an individual's weight in kilograms to the square of his or her height in meters (kg/m2). We generally will rely upon the judgment of a physician as to whether an individual is obese.

As indicated in SSR 02-1p, obesity may have an adverse impact upon co-existing impairments. For example, obesity may affect the cardiovascular and respiratory systems, making it harder for the chest and lungs to expand and imposing a greater burden upon the heart. Someone with obesity and arthritis affecting a weight-bearing joint may have more pain and limitation than might be expected from arthritis alone. In addition, obesity may limit an individual's ability to sustain activity on a regular and continuing basis during an eight-hour day, five-day week or equivalent schedule. These considerations have been taken into account in reaching the conclusions herein.

The Administrative Law Judge notes that the [plaintiff] is 5'8" tall

> and weighed 267 pounds on May 5, 2009 (Exhibit 2E. p 1) for a BMI of over 47.1 (CDC/BMI calculator= http://www.cdc.gov/nccdphp/dnpa/bmi/adult_BMI/english_bmi_ca lculator/bmi_calculator.htm) and that his weight directly affects his OSA, his diabetes, and is a symptom of his HTN. Therefore, the [ALJ] finds that his obesity does affect his other impairments.

Record at 13-14. Because she found that Mr. Jones' impairments did not equal or meet the requirements of a Listing, the ALJ then determined whether or not Plaintiff retained the RFC to perform his past relevant work or other work existing in significant numbers in the national economy. After careful consideration of the record, the ALJ found that Mr. Jones is unable to perform any past relevant work.

> The [plaintiff] has past relevant work as a cashier, which the vocational expert, Sherry L. Krystal-Turetzky in her testimony stated is classified by the Directory of Occupational Titles (hereinafter "DOT") as unskilled, light level work. The [plaintiff's] residual functional capacity is for a very limited range of light exertional level work only involving,

> The impartial vocational expert Sherry L. Krystal-Turetzky, offered testimony indicating that given the [plaintiff's] particular residual functional capacity, he cannot return to any of his past work. The Administrative Law Judge agrees with this opinion and is convinced that the [plaintiff] cannot perform the duties of any of his past relevant work. The past relevant work required the performance of work activities precluded by his medically determinable impairment and, therefore, he is unable to return to the type of work he performed in the past.

Record at 18. However, the ALJ determined that Plaintiff has the RFC to perform less than the full range of light work, except he cannot climb ladders, ropes or scaffolds; can only occasionally use ramps and climb stairs; can perform no more than occasional balancing, stooping, kneeling, crouching and crawling; also, he should avoid hazards including moving machinery and unprotected heights. He further requires the ability to alternate sitting and standing at will. Record at 14. In

determining Mr. Jones' RFC, the ALJ considered the medical evidence of record, as described above in this Report and Recommendation. Moreover, she further notes:

> In making this finding, the [ALJ] has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929 and SSRs 96-4p and 96-7p.
>
> The [ALJ] has also considered opinion evidence in accordance with the requirements of 20 CFR 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.
>
> . . . . .
>
> The [plaintiff] testified he completed the 10th grade and is able to read, to write and do simple mathematics. He initially testified that he was in special education, but denied that he has a GED although it was reported. After being shown the reference for this, he denied reporting that he was not in special education (Exhibit 2E. p 8). He testified that he had no work other than work in April-August 2000. He said he is not able to work because of hip pain, diabetes, sleep apnea and hypertension. He said that he falls asleep all the time and this happens 10-20 times a day. He said that he sleeps 20 hours in 24-hour period. Typically, he sleeps from 9:00 PM to 3:00 AM; then he is up for 1 hour before again sleeping from 4:00 AM to 6:00 AM. Then he is back to sleep at 7:00 AM and at that point he could sleep from 30 minutes up to 4-5 hours. He is then awake for 3 hours around the house but if he sits he may fall back to sleep. His longest sleep period is 4-5 hours. He has gotten advice about sleeping, but nothing helps. He had used his continuous positive airway pressure (hereinafter "CPAP") mask for about one year and it did help a little, but he has not been able to use it due to insurance issues. In addition, he said he could only use it for 4 hours at a time. He finds he is still tired and restless during day. He said that he is 5'9" tall and weighs 260 lbs. His doctor recommended that he lose weight. He did lose 3 lbs. by changing his diet, eating less and eating fruit. He gasps for air and is concerned that he may just stop breathing. He was never hospitalized or taken to a Hospital Emergency Room (hereinafter "ER") because of his sleep D/O. However, he has not driven since he was diagnosed, because he falls asleep so easily. He used to be active playing basketball and football, but stopped when he developed his sleep apnea.

He has a problem with his right hip and has been using a cane for the past few months. He noted that the cane was not prescribed, but was recommended, by his doctor. He has a walker which he uses a couple of times a week to get out of bed when he has pain in his back. He has been on Tramadol for approximately one year due to hip pain. He said he was told he needs hip replacement surgery. He has a problem climbing stairs due to his hip and he gets shortness of breath (hereinafter "SOB"). He said that he is not able to do chores.

He had been taking HTN medications for a few years, but had stopped because he lost his insurance. His blood pressure is still high at times and he sometimes gets dizzy. The [plaintiff] has gone to the ER with complications from HTN and diabetes; the last time being in June 2009. He had headaches about three times a week that last 4-6 hours, and sometimes, last days. He either tries to sleep them off or just takes over-the-counter (hereinafter "OTC") medications.

His diabetes causes his blood-sugar levels to go up and down. Sometimes his sugar levels go up to twice the normal limits of up to 200 and more which happened on his ER admission in June 2009. His current medication seems to be controlling this well.

He lives with his wife and two children. He performs no chores, but said that he had been able to do a little bit more before his problem with his right hip, back and knees started about one year ago.
. . . . .
The [plaintiff] testified he does not drive, but U of P records show a report of driving on January 30, 2010 (Exhibit 8F).
. . . . .
After careful consideration of the evidence, the [ALJ] finds that the [plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible because:

●There is no opinion in the file from a physician that declared the [plaintiff] permanently disabled or even temporarily disabled for at least a 12-month period. The State Agency medical consultant physician diagnosed the [plaintiff] with "OSA S/P Tonsillectomy", "HTN", "Obesity" and "Alleged Narcolepsy", but opined that the [plaintiff] has no physical limitations other than that he should never climb ladders, ropes or scaffolds (Exhibit 6F). This is not a work preclusive evaluation. The [plaintiff's] orthopedic surgeon Dr. Bruce

Heppenstall reported that even though the [plaintiff] was scheduled to have a total right hip replacement surgery, he would only be unable to work for 3 months. This also is not a work preclusive evaluation. ●In addition the [plaintiff] has had "no witnessed apneas when using CPAP, but has witnessed apneas off CPAP" (Exhibit 5F. p 7).

The [plaintiff] reported his primary problems are with sleep and recent issues with his right hip. He has been diagnosed with OSA and is prescribed a CPAP mask. His sleep study findings improved after he had a tonsillectomy. He states that he falls asleep throughout day, but there are no references to this in his records and no diagnosis of narcolepsy. His recent problem with his hip is documented in the records in December 2010. The very generous RFC determined in this case is based in large part upon this hip problem. The [plaintiff's] treating physician noted that the [plaintiff] will be unable to work for 3 months after his hip replacement surgery. Recent problems include a diagnosis of diabetes on June 2009 with a history of non-compliance in regard to his HTN.

While the Administrative Law Judge believes that the [plaintiff] does have some symptoms and limitation of function, it is not to the extent that the [plaintiff] alleges. Therefore, based upon a consideration of the subjective allegations weighed against objective medical evidence and other relevant information bearing on the issue of credibility, the Administrative Law Judge finds that the [plaintiff's] assertions concerning the severity of his impairments, and their impact on his ability to work, are only credible to the extent that they support a finding of being able to perform work at the light exertional level with the cited preclusions (20 CFR 416.929 and Social Security Ruling 96-7p).

Record at 14-18. The ALJ concluded that, considering Mr. Jones' age, education, work experience and his RFC, there are jobs that exist in significant numbers in the national economy that he can perform. Record at 19.

Present at Plaintiff's Hearing was VE Sherry L. Kristal-Turetsky. The ALJ asked her whether jobs exist in the national economy for an individual with Mr. Jones' age, education, work experience and RFC.

If the [plaintiff] had the residual functional capacity to perform the full range of light work, a finding of "not disabled" would be directed by Medical-Vocational Rule 202.20. However, the [plaintiff's] ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, the Administrative Law Judge asked the vocational expert whether occupations exist in the national economy for an individual with the [plaintiff's] age, education, work experience, and residual functional capacity.

The [plaintiff] testified that the individual could perform the occupations of a parking lot cashier attendant which, the vocational expert, Sherry Krystal-Turetzky stated is classified by the Directory of Occupational Titles (hereinafter "DOT") as DOT 211.462-010, semi-skilled, light exertional level work; and, an information clerk which is classified as DOT 237.367-018, semi-skilled, light exertional level work. At the light exertional level, provided that the hypothetical individual stayed within the above set out restrictions, the individual could perform these occupations which exist in the regional and/or national economy. The number of existing jobs for these positions are: for parking lot cashier attendant with approximately 110,000 jobs nationally and 1,200 jobs regionally; and for an information clerk with approximately 125,000 jobs nationally and 2,000 jobs regionally (20 CFR 404.1566 and Social Security Ruling 96-9p). The Administrative Law Judge finds that these are representative of a significant number of jobs existing in the regional or national economy that the [plaintiff] can perform.

Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Record at 19. Mr. Jones was not found to have been under a disability, as defined in the Social Security Act, since February 20, 2009, the date the application was filed. Record at 20.

## V. DISCUSSION

Plaintiff argues that the ALJ failed in her duty to evaluate properly Mr. Jones' obesity. In addition, he alleges that substantial evidence does not support the ALJ's conclusion that Mr. Jones'

hip impairment does not meet or equal the requirements of the listing, nor does it support the ALJ's conclusion that Plaintiff can perform a limited range of light work on a sustained basis. Finally, Plaintiff claims that the ALJ erred in relying upon the testimony of the VE where she failed to adequately explain the discrepancy between her testimony and the DOT regarding the existence of a sit stand option. Record at 7-17.

### A. Obesity

Mr. Jones claims that the ALJ failed in her duty to evaluate properly his obesity. The ALJ considers obesity in the sequential evaluation process as follows:

> ●The individual has a medically determinable impairment. . . .
> ●The individual's impairment(s) is severe. . . .
> ●The individual's impairment(s) meets or equals the requirements of a listed impairment in the listings. . . .
> ●The individual's impairment(s) prevents him or her from doing past relevant work and other work that exists in significant numbers in the national economy. . . .

SSR 02-1p, 2002 WL 34686281 *3 (S.S.A.).

In her decision, the ALJ explains that "Social Security Ruling 02-1p requires Administrative Law Judges to consider obesity in determining whether claimants have medically determinable impairments that are severe, whether those impairments meet or equal any listing, and finally in determining the residual functional capacity". She then proceeds to give several examples of how obesity "may have an adverse impact upon co-existing impairments". Record at 14. In addition:

> The Administrative Law Judge notes that the [plaintiff] is 5'8" tall and weighed 267 pounds on May 6, 2009 (Exhibit 2E.p 1) for a BMI of over *47.1* (CDC/BMI calculator = http://www.cdc.gov/nccdphp/dnpa/bmi/adult_BMI/english_bmi_calculator/bmi_calculator.htm) and that his weight directly affects his OSA, his diabetes, and is a symptom of his HTN. Therefore, the [ALJ] finds that his obesity does affect his other impairments.

Record at 14 (emphasis in original).

Initially, the ALJ found that Mr. Jones' obesity constituted a severe impairment at step two of the sequential evaluation process. Record at 12. At the third step of the sequential evaluation process, the ALJ clearly states that Mr. Jones' "obesity does affect his other impairments". Record at 14. However, taking particular note of the listings concerning Plaintiff's severe impairments, the ALJ determined that he does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. As the ALJ opined:

> ●The requirements of Listing 1.02, relating to major dysfunction of a joint(s) due to any cause, are not met by the medical evidence in this case. The [plaintiff] retains effective ability to ambulate and to perform fine and gross movements effectively in two extremities.
> ●Nowhere in the record is there any mention, since the date of disability onset of a sleep-related breathing disorders (sleep apneas) caused by periodic cessation of respiration associated with hypoxemia and frequent arousals from sleep. The [plaintiff] has shown that he has responded to prescribed treatment to lessen his disturbed sleep pattern and associated chronic nocturnal hypoxemia; and it has not caused pulmonary hypertension as required to meet the specifics of Listing 3.10.
> ●Nowhere in the record is there any mention, since the date of disability onset of a hypertensive condition of such profound severity as required to meet any of the listings in Section 4.01.
> ●Nowhere in the record is there any mention of the degree of neuropathy, acidosis, or retinitis proliferans as required to meet or equal Listing 9.08: Diabetes mellitus.
>
> There is no objective evidence in the record to support a finding that the [plaintiff's] condition meets any of these Listing requirements. . . .Additionally, no treating or examining physician has credibly mentioned findings equivalent in severity to the criteria of any listed impairment. In reaching this conclusion, I have also considered the opinion of the State Agency medical consultants who evaluated the issue at the initial level of the administrative review process and reached the same conclusion that the [plaintiff's] impairments do not meet or equal a listing (20 CFR 416.927 and Social Security Ruling 96-6p).

Record at 13-14. She determined that even though Mr. Jones' obesity does affect his other impairments, the requirements to satisfy the listings are not satisfied.

The cumulative effects of Plaintiff's impairments, including his obesity, were also considered in the ALJ's determination of Mr. Jones' RFC to perform less than the full range of light work, with appropriate limitations. Plaintiff's detailed testimony is addressed and considered, in which he related that his doctor recommended that he lose weight. He did manage to lose a little weight by changing his diet. Record at 15, 36-37. Medical evidence reveals that Mr. Jones was encouraged to lose weight by decreasing his intake of sugars, salts and carbs. Record at 241-243. The ALJ noted Plaintiff's physical RFC assessment indicated a secondary diagnosis of obesity. In spite of this diagnosis, no exertional, manipulative, visual, communicative or environmental limitations were established. Furthermore, Mr. Jones can occasionally climb and frequently balance, stoop, kneel, crouch and crawl. Record at 17, 290-295. As the ALJ stated, "[t]he very generous RFC determined in this case is based in large part upon [Plaintiff's] hip problem", not his obesity. Record at 18. Though the ALJ determined that Mr. Jones cannot return to his past relevant work, she did opine that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Mr. Jones can perform. Record at 19, 55-61. Upon determining that Mr. Jones' severe impairments included obesity, the ALJ proceeded to take that into consideration through the remainder of the sequential evaluation. Of particular note is the fact that Plaintiff did not claim on his Disability Report-Adult that his obesity impacted his ability to work, nor did he so indicate at the Hearing. Record at 36-54, 180-188. The ALJ "will not make assumptions abut the severity or functional effects of obesity combined with other impairments". SSR 02-1p, 2000 WL 628049 at *6 (S.S.A.). Substantial evidence reveals that the ALJ properly

considered Mr. Jones' obesity.

### B. <u>Hip Impairment</u>

Plaintiff further alleges that substantial evidence does not support the ALJ's conclusion that his hip impairment does not meet or equal the requirements of the Listing. Plaintiff's Brief at 10. The ALJ discussed Mr. Jones' hip difficulties at length and clearly states that "[t]he requirements of Listing 1.02, relating to major dysfunction of a joint(s) due to any cause, are not met by the medical evidence in this case. The [plaintiff] retains effective ability to ambulate and to perform fine and gross movements effectively in two extremities". Record at 13.

Mr. Jones indicated that he has a problem with his right hip, and began using a cane[5] a few months prior to his Hearing. He also said that, due to back pain, he uses a walker a couple of time a week to get out of bed. His hip also makes it difficult for him to climb stairs. Record at 15.

In a physical RFC assessment completed on May 19, 2009, Louis Tedesco, MD determined that Mr. Jones had no exertional limitations. Postural limitations included: occasionally climbing and frequently balancing, stooping, kneeling, crouching and crawling. Record at 290-295.

Shortly thereafter, on May 28, 2009, Plaintiff went to the Hospital of the University of Pennsylvania Emergency Room complaining that the left side of his face was numb, and he was diagnosed with Bells Palsy. He was in no pain, and walked with a steady gait. His limbs were 5/5 in strength bilaterally in both arms and legs. Plaintiff demonstrated grossly normal ROM in all extremities. Again, his gait and station were normal. Upon his discharge, he walked out of the ER with an upright and steady gait, respirations equal and unlabored, in no apparent distress. Record at 324-332. Approximately one month later, on June 30, 2009, Mr. Jones was again in HUP's ER,

---

[5]The use of a cane was recommended but not prescribed. Record at 15, 33.

with a diagnosis this time of diabetes and hypertension. He was in no pain and demonstrated unlimited ROM. Examination of his extremities revealed 5/5 motor bilateral upper and lower extremities, with sensation grossly intact bilaterally, both upper and lower extremities. Plaintiff left the ER against medical advise in order to attend his five-year-old daughter's graduation. Record at 297-323.

Subsequently, Mr. Jones was diagnosed with right hip avascular necrosis, and he came under the dare of R. Bruce Heppenstall, MD. December 16, 2010, progress notes reveal that Plaintiff complained of constant pain, 8-9/10 in severity, as well as having difficulty walking. On March 28, 2011, Mr. Jones agreed to undergo right hip replacement surgery. Record at 334-338, 341-345. Dr. Heppenstall wrote a letter on Mr. Jones' behalf:

> This will confirm that Eric Jones is a patient presently under my care. Mr. Jones is scheduled to undergo right total hip replacement surgery on April 11, 2011. He will be disabled and unable to work for a period of approximately 3 months time.

Record at 339. As stated by the ALJ, "[t]he very generous RFC determined in this case is based in large part upon this hip problem". Record at 18. Mr. Jones' physician opined that Plaintiff would be unable to work for approximately three months following his hip replacement surgery. This does not meet the twelve-month durational requirement mandated by the Social Security Act.[6] 42 U.S.C. §1382c(a)(3)(A). Substantial evidence supports the ALJ's determination that Plaintiff's hip impairment does not meet a Listing.

### C.  Residual Functional Capacity

Plaintiff next claims that substantial evidence does not support the ALJ's conclusion that Mr.

---

[6]Though Dr. Heppenstall mentions the possibility of post-operative complications, that was merely speculative at the time of the Hearing. Record at 335-338, 342-345.

Jones can perform a limited range of light work on a sustained basis. Plaintiff's Brief at 12. He references the repeated assertions of daytime sleepiness. Plaintiff's Brief at 13-15.

RFC is the most that a claimant can do despite his limitations. 20 C.F.R. §416.945(a). In making this assessment, the ALJ will consider the medical opinions in the case record together with the rest of the relevant evidence of record. 20 C.F.R. §416.927(b).

The ALJ determined that Mr. Jones has the RFC to perform less than the full range of light work, with the following limitations: he cannot climb ladders, ropes or scaffolds; can only occasionally use ramps and climb stairs; can perform no more than occasional balancing, stooping, kneeling, crouching and crawling; should avoid hazards including moving machinery and unprotected heights, and he requires the ability to alternate sitting and standing at will. Record at 14.

On February 26, 2006, a polysomnography report revealed that Mr. Jones suffered from obstructive sleep apnea. Record at 289. In a treatment sleep study report authored by Nalaka S. Gooneratne, MD, it was found that "CPAP at a setting of 13 cm H2O was effective in treating his sleep apnea and appears to have been well-tolerated by the patient". He was to be started on CPAP, with follow-up to improve compliance. Record at 282-283. An assessment and plan of March 21, 2006, indicated that Mr. Jones would be started on CPAP one to two weeks following a tonsillectomy scheduled for April 14, 2006. Record at 249. By May 11, 2006, Dr. Gooneratna's physician progress note reveals that Plaintiff is tolerating the therapy well, though he continues to have some mild snoring. "In general, though, he is clearly getting some treatment benefit because he reports improved daytime sleepiness." Record at 250. After Mr. Jones' tonsillectomy, another treatment sleep study report, date May 31, 2006, notes that "CPAP PS 11 on H2O seems the

reasonable option at this time". That is a reduction from his pre-tonsillectomy CPAP setting. Dr. Gooneratne asks "[Dr. Soo Kim Abboud] to continue to encourage compliance with CPAP by inquiring about it during routine visits". Record at 273-275. In an undated physician progress note, Dr. Gooneratne indicates that CPAP will be increased to PS 15, and that if sleepiness persists, "consider Smartcard to monitor compliance". Record at 251. Plaintiff still complained of significant daytime fatigue in an August 15, 2006, physician progress note. Record at 252-253.

The record is silent regarding Mr. Jones' sleep apnea in 2007. However, routine progress notes from the Philadelphia Department of Public Health dated August 22, 2008, simply state that "labs done were normal or little high. Told to [increase] fluids". Record at 218. On September 23, 2008, Plaintiff told Dr. Gooneratne that he had not been using CPAP for the past year due to insurance issues, whereupon she provided him with a charity/loaner CPAP unit. Record at 256-257.

By January 27, 2009, Mr. Jones is using CPAP at night about three nights a week, and he feels that his sleep is not changed when he uses the device. His partner reports witnessing no apneas when he is using CPAP, but she has witnessed apneas off CPAP. He continues to demonstrate normal gait and normal ROM. Though Plaintiff is more compliant with CPAP, he is still having significant sleepiness and snoring. Dr. Gooneratne reports that he is noncompliant with his medications. Record at 254-255. Two days later, at an annual doctor's visit to reestablish care upon getting insurance, Mr. Jones' report reveals that he has a loaner CPAP machine "that he is not using". Record at 244-247. Plaintiff underwent a split night sleep study on January 20, 2009, and a report on the study indicates that Mr. Jones still has sleep apnea, "although it is markedly improved from his 2006 sleep study . .". He responded well to CPAP therapy, and he will be seen in follow-up to monitor his compliance and address his daytime sleepiness". Record at 260-262.

Shortly after Plaintiff protectively filed for Social Security benefits on February 20, 2009, he attended a follow-up visit with Chevron Haswell, MD for headache. On February 26, 2009, Mr. Jones reported that he is "more tired-has sleep apnea-not using machine". Plaintiff "doesn't use CPAP machine because he feels it does not work". He was told to use the sleep machine, and the doctor discussed with Plaintiff the risks of untreated sleep apnea, the importance of wearing CPAP every night and devoting a dedicated block of time to sleep. Better sleep hygiene was encouraged. Also encouraged, were lifestyle and diet modifications, as well as weight loss. Record at 241-243. On March 17, 2009, Mr. Jones complained of a cold, during which time he stopped using his CPAP. Nonetheless, he was comfortable and breathing without distress. Persistent sleepiness continued. Record at 258-259.

There are repeated references in the record to Mr. Jones' daytime sleepiness. There are also repeated references to his non-compliance regarding the use of his CPAP, as well as his other medications. Record at 217-218, 232, 238, 241-243, 244-247, 249, 254-255. Though it is reported that Plaintiff fell asleep two or three times during his field office interview on March 20, 2009, there is no indication that he had difficulty staying awake during his Hearing on March 29, 2011. The record reveals no diagnosis of narcolepsy. The only work-related limitation mentioned by any of Plaintiff's physicians is his estimated three-month convalescence from hip replacement surgery. As the ALJ noted:

> ●There is no opinion in the file from a physician that declared the [plaintiff] permanently disabled or even temporarily disabled for at least a 12-month period. The State Agency medical consultant physician diagnosed the [plaintiff] with "OSA S/P Tonsillectomy", "HTN", "Obesity" and "Alleged Narcolepsy", but opined that the [plaintiff] has no physical limitations other than that he should never climb ladders, ropes or scaffolds (Exhibit 6F). This is not a work

preclusive evaluation. The [plaintiff's] orthopedic surgeon Dr. Bruce Heppenstall reported that even though the [plaintiff] was scheduled to have a total right hip replacement surgery, he would only be unable to work for 3 months. This also is not a work preclusive evaluation. ●In addition the [plaintiff] has had "no witnessed apneas when using CPAP, but has witnessed apneas off CPAP" (Exhibit 5F.p 7).

. . . . .

. . . Therefore, based upon a consideration of the subjective allegations weighed against objective medical evidence and other relevant information bearing on the issue of credibility, the Administrative Law Judge finds that the [plaintiff's] assertions concerning the severity of his impairments, and their impact on his ability to work, are only credible to the extent that they support a finding of being able to perform work at the light exertional level with the cited preclusions (20 CFR 416.929 and Social Security Ruling 96-7p).

Record at 17-18. Substantial evidence supports the ALJ's finding that Mr. Jones has the RFC to perform less than the full range of light work, with the cited limitations, making him, thus, not disabled.[7]

### D. **Vocational Expert**

Finally, Plaintiff claims that the ALJ erred in relying upon the testimony of the VE where she failed to adequately explain the discrepancy between her testimony and the DOT regarding the existence of a sit stand option. Plaintiff's Brief at 16. The VE testified as follows:

Q . . . Okay. I am sorry, before I forget, Ms. Krystal-Turetzky, is your testimony consistent with the DOT?

A Yes.

Q And, with respect to the sit-stand, is that covered by a DOT?

---

[7]Plaintiff states that an inadvertent incomplete statement in the ALJ's decision "compounds the deficiencies in the ALJ opinion". Plaintiff's Brief at 13. The incomplete sentence reads: "The [plaintiff's] residual functional capacity is for a very limited range of light exertional level work only involving". Record at 18. The completion of the sentence can be determined by simply referring to the ALJ's description of Mr. Jones' RFC in the Record at 14. The incomplete sentence is a harmless error.

> A The DOT does not cover the sit-stand option and the foundation for the other opinion is based on professional experience in performing on-site job analyses, labor market research, and job placement.

Record at 61.

The DOT is not comprehensive. *See Wright v. Sullivan*, 900 F.2d 675, 684 (3d Cir. 1990). Because the DOT does not cover the sit-stand option, the DOT and the testimony of the VE are not necessarily inconsistent in this regard. Thus, the duty on the part of the ALJ to inquire into conflicts does not arise. *See Burns v. Barnhart*, 312 F.3d 113, 128 (3d Cir. 2002). Furthermore, a VE's testimony in response to a hypothetical question which sets forth all credibly established limitations can be relied upon as substantial evidence supporting an ALJ's conclusion. *See Rutherford v. Barnhart*, 399 F.3d 546, 554 (3d Cir. 2005).

Mr. Jones does not question the ALJ's hypothetical question posed to the VE, but he takes issue with the VE's basis for her testimony concerning the sit-stand option. He simply wants a greater explanation. In a similar matter, as stated by the Honorable Linda K. Caracappa in a Report and Recommendation subsequently approved and adopted by the Honorable J. Curtis Joyner,

> Plaintiff has not pointed to any law or regulations that compel us to call into question the methodology or sources used by the vocational expert. The vocational expert did not testify that the method he used in this case to determine numbers of jobs available is any different than the method used and accepted in any other social security case. . . . Further, we find it significant the large amount of jobs available for each of the three positions discussed by the vocational expert. Plaintiff here is doubting the vocational expert's methodology when for each of the positions discussed, the VE testified that there is no less than 500 jobs available regionally. . . .accordingly, we recommend that this last claim of the request for review be denied, as the ALJ reasonably relied on the vocational expert's testimony.

*James v. Astrue*, 2011 WL 7143113 *25 (E.D.PA. December 27, 2011) (adopted by the District

Court, 2012 WL 346676 (E.D.PA. February 3, 2012)). The above applies, too, to the case at hand.

As stated by the ALJ:

> The [plaintiff] testified that the individual could perform the occupations of a parking lot cashier attendant which, the vocational expert, Sherry Krystal-Turetzky stated is classified by the Directory of Occupational Titles (hereinafter "DOT") as DOT 211.462-010, semi-skilled, light exertional level work; and, an information clerk which is classified as DOT 237.367-018, semi-skilled, light exertional level work. At the light exertional level, provided that the hypothetical individual stayed within the above set out restrictions, the individual could perform these occupations which exist in the regional and/or national economy. The number of existing jobs for these positions are: for parking lot cashier attendant with approximately 110,000 jobs nationally and 1,200 jobs regionally; and for an information clerk with approximately 125,000 jobs nationally and 2,000 jobs regionally (20 CFR 404.1566 and Social Security Ruling 96-9p). The Administrative law Judge finds that these are representative of a significant number of jobs existing in the regional or national economy that the [plaintiff] can perform
>
> Pursuant to SSR 00-4p, the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Record at 19. There is substantial evidence to support the reliance of the ALJ on the VE's testimony in this matter.

## III. **RECOMMENDATION**

Consistent with the above discussion, it is recommended that the Plaintiff's Motion for Summary Judgment and Request for Review be DENIED and that judgment be entered in favor of Defendant.

Plaintiff may file objections to this Report and Recommendation within fourteen (14) days after being served with a copy thereof. Fed.R.Civ.P. 72. Failure to file timely objections may constitute a waiver of any appellate rights. *Leyva v. Williams*, 504 F.3d 357, 364 (3d Cir. 2007).


 S/M. FAITH ANGELL
M. FAITH ANGELL
UNITED STATES MAGISTRATE JUDGE


By E-mail:    Hon. Mitchell S. Goldberg
              John S. Whitelaw, Esq.     jwhitelaw@clsphila.org
              Eda Giusti, Esq.            eda.giusti@ssa.gov
              M. Jared Littman, Esq.    jared.littman@ssa.gov